ATLAS STEAMSHIP CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 18609.   Promulgated January 7, 1930.

*Joseph A. Vaughan, Esq.*, and *M. Carter Hall, Esq.*, for the petitioner.

*John D. Foley, Esq.*, for the respondent.

656

## OPINION.

TRAMMELL: The only issue in this case is whether the amount received from the insurance companies as proceeds of insurance policies to the extent that such amount exceeds the depreciated cost of the *Vulcan* represents taxable income to the petitioner.

The petitioner contends that the action of the stockholders on January 14, 1919, constituted a partial liquidation of the corporation and that the *Vulcan* was distributed in kind to the stockholders. Upon this premise it is contended that when the stockholders received the proceeds of the insurance policies the transaction amounted to a receipt by the stockholders of a profit, but that the corporation received no taxable gain from the transaction.

If, as a matter of fact, the corporation distributed in kind the steamship in exchange for stock surrendered by the stockholders instead of the proceeds of insurance policies or the right to receive

such proceeds, it may be conceded that no taxable gain resulted to the corporation. Before this principle of law, however, is shown to be applicable to this proceeding, the fact must be established by the preponderance of the evidence that the steamship which is claimed to have been distributed in kind was so distributed.

On this issue we find that the vessel sank on November 9, 1918; that on January 3, 1919, and January 7, 1919, January 10 and also 13, 1919, insurance policies with four companies had been paid. We can not, from the evidence, find otherwise than that these amounts were paid to the petitioner corporation, as it was not until January 14, 1919, after these policies had been paid, that the action was taken by the corporation for the purpose of distributing to its stockholders " the Company's interest in the wreck of the Steamer Vulcan and all interest of the Company in and to all insurance policies in the Steamer Vulcan and any monies arising therefrom."

We must consider also the fact that on November 9, 1918, the petitioner had notified the insurance companies that the steamship had been abandoned as a total loss. It is true that no notification had been received that the insurance companies would accept it as a total loss, but we can not overlook the fact that on January 14, 1919, as much as $32,500 had already been received by the petitioner, which appears to represent the total amount for which the four companies had insured the vessel. We must also consider the wording of the offer of the stockholders which was made on January 9, 1919, which offer was accepted on the 14th of January, 1919, the fact that the individual who was the surveyor or adjustor for the insurance underwriters represented all of them. It would seem unreasonable that he would recommend to some of the companies that the vessel was a total loss if he did not so treat it with respect to the other companies. The vessel was at the bottom of the sea. The settlement was in process of being made, and, as stated above, $32,500 had already been paid on insurance policies. The facts and circumstances of the case lead us to the irresistible conclusion that what was transferred to the stockholders was the actual proceeds of the insurance policies at that time already received and the right to receive the proceeds of other insurance policies and that the vessel, itself, was not intended to be and was not in fact distributed in kind to the stockholders as a liquidating dividend.

We think that the facts are inconsistent with the contention that the vessel, itself, was distributed in kind to the stockholders. Clearly at least as much as $32,500 was distributed to the stockholders in cash by the petitioner, as this arrangement between the stockholders and the corporation was not made until after the corporation had actually received that amount in cash from the proceeds of the policies.

It seems to us that the fact that four of the insurance companies had paid their claims apparently in full, and that all of the companies had the same surveyor or adjuster on whose recommendations they constantly relied, is sufficient to put the petitioner upon notice that the abandonment of the vessel had been accepted and that it was reasonably certain that the stockholders would receive only the proceeds of insurance policies when the transfer to the stockholders was made.

In view of the foregoing we have found as a fact that what was distributed was the proceeds of the insurance policies.

In view of our conclusion as to the fact that the *Vulcan* was not in fact distributed in kind to the stockholders, we think that it is immaterial that the stockholders were assigned the right to receive the proceeds of the insurance policies direct from the companies rather than from the petitioner. *Rensselaer & S. R. Co.* v. *Irwin*, 249 Fed. 726; 246 U. S. 671; *Ormsby McKnight Mitchel*, 1 B. T. A. 143.

The gain derived from the transaction was therefore taxable to the petitioner.

*Judgment will be entered under Rule 50.*